UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DONALD A. BYRD, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:11-CV-1191 (CEJ) |
| ) | |
| DAVE DORMIRE, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM

This matter is before the Court on the petition of Donald A. Byrd for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### I. Procedural Background

Petitioner Donald Byrd is presently incarcerated at the Jefferson City Correctional Center pursuant to the sentence and judgment of the Circuit Court of Pemiscot County, Missouri. On February 8, 2007, a jury found petitioner guilty of four counts of first-degree statutory sodomy, in violation of Mo.Rev.Stat. § 566.062.[1] The trial court sentenced petitioner as a prior and persistent offender to concurrent 30-year terms of imprisonment. Judgment, Resp. Ex. A. at 53-54. Petitioner appealed his conviction on Count II and, on November 4, 2008, the Missouri Court of Appeals affirmed. State v. Byrd, No. 28417 (Mo. Ct. App. Nov. 4, 2008). Resp. Ex. D.

Petitioner filed a timely motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, which the post-conviction court denied following an

---

[1]Petitioner was charged with committing deviate sexual intercourse with a person under the age of 12 on more than one occasion between September 2002 and March 2005, by placing his penis in S.W.'s mouth (Count I), placing his mouth on her vagina (Count II); touching her hand with his penis (Count III); and touching her vagina with his hand (Count IV).

evidentiary hearing. On December 30, 2010, the Missouri Court of Appeals affirmed the denial of post-conviction relief. Byrd v. State, 329 S.W.3d 718 (Mo. Ct. App. 2010). On July 7, 2011, petitioner timely filed this petition for relief pursuant to 28 U.S.C. § 2254.

## II. Factual Background

On March 19, 2005, 10-year-old S.W. told her mother ("Ms. Byrd") that she had been molested by petitioner, her stepfather with whom she had lived since she was two months old. Ms. Byrd called the police. Ann Cutler, an investigator with the Children's Division of the Missouri Department of Social Services, interviewed S.W. later that day. S.W. told Ms. Cutler that she had been molested by petitioner on three or four occasions. Tr. 282-83. She also said that petitioner told her that she would be sent away if she told anyone. Tr. 284.

Ms. Cutler scheduled a forensic examination to take place on March 28, 2005. In the meantime, Ms. Byrd and her children went to stay with Jessica Smith, Ms. Byrd's cousin, who was married to petitioner's brother. Ms. Smith testified at trial that she had a private conversation with S.W. in which she told her that she needed to "tell the truth" so that her mother would feel better. Tr. 393-95. After this conversation, Ms. Smith told Ms. Byrd that S.W. said petitioner had not molested her. Tr. 263. Ms. Smith accompanied S.W. and her mother to the scheduled forensic examination.

The examination was conducted by Katherine Blevins, a nurse practitioner with extensive experience in conducting forensic examinations of children and adults who have been sexually abused. Tr. 293. As part of the evaluation, Ms. Blevins completed a physical examination of S.W., during which she found no physical evidence of sexual abuse. Ms. Blevins testified, however, that "physical findings" of sexual abuse

are found in fewer than 5% sexually-abused children. Tr. 309. Ms. Blevins also conducted two videotaped interviews with S.W., which were played for the jury. The videotapes showed S.W. using anatomical drawings to describe a number of sexual activities petitioner had engaged in with her. Tr. 315-16. At some point, however, S.W. told Ms. Blevins that she had made the story up. Tr. 325 ("She said that she had told a lie about her daddy . . . Donald."). Ms. Blevins testified that it is not unusual for victims to recant. Based on S.W.'s initial statements and body language, Ms. Blevins believed S.W. had been molested by petitioner. Tr. 326-28.

A few days after the forensic evaluation, S.W. told her classroom teacher she wanted to speak with the school guidance counselor, Carolyn Hayes. S.W. told Ms. Hayes that petitioner had abused her. She also said that Jessica Smith pressured her to recant. Tr. 343-44 (S.W. "said that Aunt Jessica . . . had told her to tell them that her dad had not done this, and had kept on and on until . . . she told one lady that he didn't, but he did."). When S.W. began to describe petitioner's actions in detail, Ms. Hayes asked the school nurse to join them. S.W. told them that petitioner had molested her on a number of occasions. (Tr. 344-45).

On August 9, 2005, S.W. was interviewed by Tommy Capps, an investigator with the Division of Children's Services. A videotape of the interview was played at trial. S.W. told Mr. Capps that, at various times, petitioner put his penis in her mouth, put his mouth and his hand on her vagina, and made her put her hand on his penis. See Tr. 17-21 (pretrial evidentiary hearing).

Additional facts will be included as necessary to address the merits of petitioner's claims for relief.

III. <u>Legal Standard</u>

When a claim has been adjudicated on the merits in state court proceedings, habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), only if the state court's determination:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d)(1)-(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Payton, 125 S. Ct. at 1439; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 406. "Federal habeas relief is warranted only when the refusal was 'objectively

unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410-11).

IV. **Discussion**

A. **Grounds 1 and 2: Sufficiency of the Evidence on Count II**

Petitioner asserts that there was no evidence that he put his mouth on S.W.'s vagina on more than one occasion, as charged in Count II of the second amended information. Resp. Ex. A at 14-15. He claims that the trial court erred by denying his motion for acquittal on this count (Ground 1) and that the court of appeals erred by affirming his conviction (Ground 2).

During direct examination, S.W. twice answered "No" when the prosecutor asked whether petitioner ever touched her vagina with his mouth. Tr. 221. On cross-examination, when asked again, she answered, "I can't remember." Tr. 237. However, in August 2005, S.W. told investigator Tommy Capps that petitioner did touch her "private" with his mouth -- once while they were at her grandmother's home and once in a trailer. See Tr. 20; Resp. Ex. D at 11. The videotape of this interview was played for the jury during the State's case and during their deliberation. Tr. 357-58; 446-57.

"Constitutionally, sufficient evidence supports a conviction if, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Garrison v. Burt, 637 F.3d 849, 854 (8th Cir. 2011) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). To prevail on his claim, petitioner must show that the state courts' conclusion that the evidence satisfied the Jackson sufficiency of evidence standard was "both incorrect and unreasonable." Id. at 855.

The Missouri Court of Appeals determined that the videotaped interview was properly admitted into evidence and that S.W.'s statements during the interview constituted sufficient evidence for a reasonable person to find that petitioner committed first-degree statutory sodomy by placing his mouth on S.W.'s vagina on more than one occasion. Resp. Ex. D at 15. Petitioner argues that S.W.'s videotaped statements were contradicted by her trial testimony and thus cannot constitute evidence. To the extent that S.W. gave conflicting statements, it was the function of the jury to evaluate which version they found credible. Petitioner may disagree with the jury's credibility determination, but that is a different question than whether the prosecution presented evidence in the first instance. Because there was evidence sufficient to establish the charged offense, the decisions of the state courts were not contrary to, or unreasonable applications, of established federal law.

## B. Grounds 3 through 9: Ineffective Assistance of Counsel

Petitioner asserts three claims that his trial counsel rendered constitutionally ineffective assistance, three claims that the Missouri Court of Appeals erred in affirming the denial of post-conviction relief on these claims, and one claim that post-conviction counsel was ineffective.

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687 (1984). With respect to the first Strickland prong, there exists a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. Id. at 689. In order to establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

"Taken together, AEDPA and Strickland establish a 'doubly deferential standard' of review." Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Cullen v. Pinholster, –––U.S. –––, 131 S. Ct. 1388, 1410 (2011)).

> First, under Strickland, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. Strickland, 466 U.S. at 696. . . To satisfy Strickland, the likelihood of a different result must be "substantial, not just conceivable." Id. Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the Strickland standard is unreasonable, not merely whether it is incorrect. Harrington v. Richter, ––– U.S. –––, 131 S. Ct. 770, 792, 785 (2011). This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 786.

Id. at 831-32.

### (1) Juror Dale Hall

Petitioner asserts that trial counsel rendered ineffective assistance by failing to challenge juror Dale Hall during jury selection or to move for a mistrial after Mr. Hall revealed mid-trial that he knew petitioner and his family. He asserts that the post-conviction court erred in denying his ineffective-assistance claim (Ground 3) and that the appeals court erred in affirming that denial (Ground 4).

At trial, Ms. Byrd testified that the family had lived at 115 West Main St., in Hayti, Missouri, at some time between 2002 and 2005. (Tr. 253-56). During a recess following this testimony, juror Dale Hall informed the court that he lived at 110 West Main St. (Tr. 278). In response to questions from the court, Mr. Hall stated that he

had not interacted socially with members of petitioner's family and had not known their names. He felt that he could be a fair and impartial juror. The attorneys did not ask Mr. Hall any additional questions and he was allowed to remain on the jury.

Petitioner and his trial counsel both testified at the post-conviction evidentiary hearing. Counsel testified that petitioner told him during voir dire that Mr. Hall might have been a neighbor. Resp. Ex. K at 5. According to counsel, petitioner thought Mr. Hall's familiarity with the family would be beneficial to the defense, because Mr. Hall would know that S.W. and her family were "somewhat untruthful." Counsel testified that he thought it was "odd" that Mr. Hall did not state he knew the family during voir dire, but counsel did not pursue the issue because petitioner wanted Mr. Hall on the jury. Id. at 6. When, during trial, Mr. Hall stated that he knew the family, counsel again consulted with petitioner, who again asserted that Mr. Hall's familiarity with the family was beneficial for the defense. Counsel had no recollection that petitioner told him of any negative interaction with Mr. Hall or his family. Petitioner testified at the post-conviction hearing that he told his lawyer during jury selection that he had reported Mr. Hall's son to the police for taking things from his car. Id. at 21-22. According to petitioner, his lawyer believed that, despite this incident, Mr. Hall's familiarity with the family would help the defense; petitioner testified that he was skeptical because Mr. Hall "kept giving [him] kind of dirty looks." Id. at 22.

The post-conviction court rejected petitioner's claim that counsel rendered ineffective assistance by failing to move to strike Mr. Hall during jury selection. The court found that petitioner acquiesced in the decision to leave Mr. Hall on the jury and thus was foreclosed from raising the issue in a post-conviction motion. Resp. Ex. F at 5-6. Boyd v. State, 86 S.W.3d 153, 158 (Mo. Ct. App. 2002) ("Improper jury selection

may be advanced for the first time under Rule 29.15 if the movant can show that he had no knowledge of the improper jury selection process until after his trial.") Petitioner cannot overcome the court's determination that he approved of counsel's decision. See 28 U.S.C. § 2254(e)(1) (state court fact determinations entitled to presumption of correctness that can be overcome by clear and convincing evidence). The court also rejected petitioner's claim that counsel erred by failing to move for a mistrial once juror Hall revealed he knew petitioner and his family. There was no evidence that Mr. Hall was biased against petitioner and, thus, petitioner could not establish that he was prejudiced by counsel's performance. See Sanders v. Norris, 529 F.3d 787, 794 (8th Cir. 2008) (rejecting ineffective assistance claim based on failure to remove juror where petitioner failed to establish bias). The decisions of the state courts were not contrary to, or unreasonable applications, of established federal law.

### (2) Jailhouse Informants

Darrell Kuehl and David Holifield testified that they met petitioner in the Pemiscot County Jail while they were awaiting trial on stealing charges. They each testified that petitioner told them he had abused his stepdaughter. Tr. 373-74, 381. Petitioner claims that his counsel was ineffective for failing to request a pretrial reliability hearing in order to prove their testimony was inherently unreliable. He argues that the post-conviction court erred in denying this claim (Ground 5) and that the appellate court erred in affirming the denial (Ground 6).

The state courts rejected petitioner's claim based on counsel's failure to seek a pretrial reliability hearing on this testimony because Missouri criminal procedure does not provide for such a hearing. Resp. Ex. F at 6 ("This court not aware of any such procedure in Missouri criminal cases involving unprivileged testimony by a competent,

adult, lay witness). "Counsel is not ineffective for failing to request a hearing he has no right to receive." Resp. Ex. I at 8. The court of appeals further found that petitioner failed to establish that the outcome of the trial would have been different if the testimony of the jailhouse informants had been excluded. The state court decisions are not contrary to, or unreasonable applications, of established federal law.

### (3) Ineffective assistance of post-conviction counsel

Petitioner argues in Ground 7 that post-conviction counsel provided ineffective assistance by failing to reassert the claims he raised in his *pro se* motion for post-conviction relief. He further argues that the post-conviction court denied him due process by failing to issue findings of fact and conclusions of law on the claims made in his *pro se* motion.

Petitioner filed a *pro se* motion for post-conviction relief pursuant to Mo.S.Ct.R. 29.15 in which he asserted five claims for relief.[2] Only petitioner's challenge to the failure to strike juror Hall was included in the amended motion filed by appointed counsel.

Petitioner does not seek relief on the merits of the excluded claims or argue that ineffective assistance of post-conviction counsel caused procedural default of the claims. Rather, he challenges the refusal of Missouri courts to review *pro se* claims that are not included in the amended petition. This alleged error in state court post-conviction proceedings does not constitute an error of constitutional magnitude and thus is not cognizable in federal habeas corpus proceedings. See Jolly v. Gammon, 28

---

[2]Petitioner asserted the following claims: a challenge to the use of the rape-shield law to exclude evidence that S.W. might have been molested by someone else; a claim that the prosecutor's opening statement was impermissibly suggestive; and three claims of ineffective assistance based on counsel's failure to present the evidence of S.W.'s abuse by others, to strike juror Hall, and to depose S.W.

F.3d 51, 54 (8th Cir. 1994) ("an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition") (citation omitted).

### (4) Failure to impeach witness

S.W.'s mother, Ms. Byrd, testified at a pretrial hearing that, about three months before S.W. disclosed the abuse, she told her mother that she would "do whatever it takes" to get petitioner out of the house. Resp. Ex. J at 63. Ms. Byrd also testified that S.W. often told petitioner she did not want him there "because him being a stepfather." Id. At trial, defense counsel asked Ms. Byrd whether S.W. "ever indicated to [her] that she wanted [petitioner] out of the house?" Id. at 270. Ms. Byrd responded, "No, she never said nothing like that." When asked a second time, she again denied that her daughter had ever stated she "wanted [petitioner] out of the house." In Grounds 8 and 9, petitioner claims that trial counsel was ineffective for failing to impeach Ms. Byrd with her prior inconsistent statement and asserts that the post-conviction court and appellate court erred in denying him relief.

At the post-conviction evidentiary hearing, trial counsel testified that he chose not to impeach Ms. Byrd because she was crying uncontrollably. Resp. Ex. K at 16. He stated he looked at the jurors and "every one of the jurors was crying." Id. "At that point beating up on this lady any more was probably going to be less than helpful . . ." Id. He also testified that there was a possibility that the prosecutor would point out that S.W. had "good reason" for wanting petitioner out of the house. Id. at 17-18.

The post-conviction court found that counsel made a reasonable strategic decision not to use Ms. Byrd's prior inconsistent statement for impeachment, and thus did not provide ineffective assistance. The court further found that petitioner could not

establish he was prejudiced by the alleged failure because impeaching Ms. Byrd would not have changed the outcome of the trial. Resp. Ex. F at 7. The appellate court affirmed. Resp. Ex. I at 10-11. The state court decisions are not contrary to, or unreasonable applications, of established federal law.

V. <u>**Conclusion**</u>

For the reasons discussed above, the Court concludes that petitioner has failed to establish that he is entitled to relief based on state court proceedings that were contrary to, or an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Petitioner has also failed to make a substantial showing of the denial of a constitutional right. Therefore, the Court will not issue a certificate of appealability. See <u>Cox v. Norris</u>, 133 F.3d 565, 569 (8th Cir. 1997).

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 13th day of May, 2014.